RECEIVED
IN LAKE CHARLES, LA.
JUL - 1 2010
TONY R. MOORE, CLERK
BY _______ DEPUTY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| | | |
|---|---|---|
| MARCUS C. DUNAWAY, ET AL. | : | DOCKET NO. 2:07 CV 1138 |
| VS. | : | JUDGE MINALDI |
| COWBOYS OF LAKE CHARLES, INC. | : | MAGISTRATE JUDGE KAY |

**MEMORANDUM RULING**

Before the Court is a Motion for Summary Judgment, filed by defendant Cowboys Nightlife, Inc. ("Cowboys") [doc. 88]. The plaintiffs, Marcus C. Dunaway, et al ("Dunaway")[1], filed an Opposition [doc. 99]. Cowboys filed a Reply [doc. 114].

Also before the Court is a Motion to Strike and Alternative Motion for Partial Summary Judgment and Motion for Partial Judgment on the Pleadings, filed by Cowboys [doc. 71]. Dunaway filed a Response, [doc. 75], and Cowboys filed a Reply [doc. 84].

**FACTS**

Dunaway has asserted multiple claims against Cowboys, alleging racial discrimination in violation of 42 U.S.C.A. § 2000a et seq, 42 U.S.C.A. § 1981, La Rev. Stat. Ann. § 51:2231 et seq., and Louisiana Constitution of 1974, Art. 1, § 12. Cowboys owns a nightclub that is open to the public.[2] Dunaway alleges that on several different occasions, Cowboys discriminated against various

---

[1] The plaintiffs are Marcus C. Dunaway, Gregory T. January, Sr., Steven LaSalle, Jeffery DeShields, Jr., Ronald George, Jr., Aaron K. LaSalle, Ahmad K. Austin, James E. Varner, Jr., Winston T. Broussard, and Brian K. Jones.

[2] Def.'s Memo. [doc. 88-3].

African American males by asking them to leave the nightclub. Cowboys contends that security guards asked the patrons to leave because of dress code violations.

This Court previously granted Cowboy's motion to dismiss all claims under 42 U.S.C.A. § 2000a et seq [doc. 106]; thus, this ruling pertains only to Dunaway's claims under 42 U.S.C.A. § 1981and Louisiana state law.

**SUMMARY JUDGMENT STANDARD**

A court should grant a motion for summary judgment when the pleadings, including the opposing party's affidavits, "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(C); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). The party moving for summary judgment is initially responsible for demonstrating the reasons justifying the motion for summary judgment by identifying portions of pleadings and discovery that show the lack of a genuine issue of material fact for trial. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). "Furthermore, the party moving for summary judgment must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (quoting *Celotex*, 477 U.S. at 323). "If the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." *Id.*

If the movant satisfies this burden, however, then the nonmoving party must "designate specific facts showing that there is a genuine issue for trial." *Tubacex,* 45 F.3d at 954. In evaluating motions for summary judgment, the court must view all facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Ultimately, a grant of summary judgment is warranted when the record as a whole "could not lead

a rational finder of fact to find for the non-moving party..." *Id.*

## ANALYSIS

Cowboys argues that it is entitled to summary judgment for the following reasons: (1) several claims have prescribed; (2) several claims allege facts that do not invoke an interest protected by federal law; (3) 42 U.S.C.A. § 1981 does not apply to the allegations of "denial of entertainment services;" and (4) the plaintiffs do not satisfy their evidentiary burden on the claims under 42 U.S.C.A. § 1981. Alternatively, if the Court does not dismiss all of Dunaway's claims, Cowboys seeks dismissal of the punitive damages claims. Further, Cowboys argues that the allegations do not impose *respondeat superior* liability on Cowboys.

**42 U.S.C.A. § 1981 Claims**

Cowboys argues that summary judgment is appropriate because several of Dunaway's claims do not invoke any right or interest protected by federal law. Cowboys points to several plaintiffs' allegations that Cowboys initially denied them entry, but ultimately granted them access into the nightclub.[3] Cowboys insists that no basis exists for a Section 1981 violation because Cowboys allowed the plaintiffs to stay at the club and their claims did not implicate any prevention, thwarting, or denial of any contract.

Further, Cowboys contends that 42 U.S.C.A. § 1981 does not apply to Dunaway's claims for denial of entertainment services. Cowboys points to several claims in which Cowboys admitted the plaintiffs into the nightclub and then required them to leave.[4] Cowboys argues that no continuing

---

[3] Paragraphs 15, 18, 20, 26. Petition [doc. 1-2].

[4] Paragraphs 6-9; 10-12; 15; 18; 19-21; 22-25; 26-27; 27(c); 27(d); 27(g); 27(h); 27(I); 27(k); 27(l). Petition [doc. 1-2]; First Supp. & Amend. Petition [doc. 2]; Second Supp. & Amend. Petition [doc. 3].

contractual relationship existed after the patrons paid a cover charge and entered the club. Cowboys points out that none of the plaintiffs have alleged that they were ever denied a drink at the bar or the ability to play pool. Cowboys insists that these claims should be dismissed because by asking the plaintiffs to leave the club, Cowboys did not violate a protected contract interest under 42 U.S.C.A. § 1981.

Cowboys adds that Dunaway cannot satisfy the burden of proof on the claims alleged in Paragraphs 6 through 27(m).[5] Cowboys contends that Dunaway cannot carry the initial burden to demonstrate a *prima facie* case of discrimination because the plaintiffs cannot identify circumstances giving rise to an inference of discrimination on the basis of race. Again, Cowboys argues that the allegations in Paragraphs 15, 18, 20, and 26 fail to satisfy a *prima facie* of discrimination because no statutorily protected right is implicated. In each situation, Cowboys personnel allowed the plaintiffs to enter the nightclub.[6]

As for the remaining claims, Cowboys argues that the plaintiffs cannot satisfy their *prima facie* burden because the plaintiffs cannot prove, by a preponderance of the evidence, that Cowboys personnel treated the plaintiffs differently than Caucasian or other similarly situated customers. Cowboys notes that the only testimony that Cowboys treated the plaintiffs differently than similarly situated Caucasian customers is from the plaintiffs themselves. Cowboys attaches the testimony of John Larche, who worked next door to Cowboys, and the testimony of two African American customers.[7] All three men testified that Cowboys turns away both Caucasian and African American

---

[5] *See* McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-804 (1973).

[6] *See* Petition [doc. 1-2].

[7] Def.'s Exs. 9, 10, 11 [docs. 88-12, 88-13, 88-14].

customers for dress code violations on a regular basis.[8]

Cowboys argues that even if the plaintiffs have established a *prima facie* case of discrimination, that Cowboys can show a legitimate, non-discriminatory reason for its adverse action. Cowboys attaches the affidavits of C.O. Vallet, Trent Moreau and the deposition testimony of Daniel Molina to establish the non-discriminatory motives for denying the plaintiffs access or requiring them to leave the nightclub.[9] Vallet's and Moreau's affidavits establish that Cowboys instituted a dress code in the early 1990s, that Cowboys has a dress code to maintain a certain level of dress for its clientele and for security reasons.[10] Cowboys' goal is to ban weapons, alcohol, drugs, and other contraband from the nightclub, and customers can easily conceal those items in baggy clothing.[11]

For the non-dress code allegations, Cowboys submits that it has policy reasons for asking those plaintiffs to leave the nightclub. Two plaintiffs alleged that Cowboys asked them to leave because they were "standing too close" to the bar.[12] In his affidavit, Moreau explained that when the bar is busy, customers are asked to move once they have received a drink so that other customers can make their way to the bar and place a drink order.[13] Other plaintiffs alleged security asked them to

---

[8] *Id.*

[9] Vallet is the sole shareholder of Cowboys, Moreau is Cowboys' head of security, and Molina is the nightclub manager. Def.'s Exs, 1, 2, 3 [docs. 88-4, 88-5, 88-6].

[10] Def.'s Exs. 1, 2 [docs. 88-4, 88-5].

[11] *Id.*

[12] Paragraphs 6, 12. Petition [doc. 1-2].

[13] Def.'s Ex. 2 [doc. 88-5].

leave because they were on the dance floor and not dancing.[14] Again, Moreau explained that the dance floor is generally crowded, and Cowboys has a policy of requiring customers to dance on the dance floor to prevent overcrowding and potential fights.[15]

Dunaway maintains that the plaintiffs in Paragraphs 15, 18, and 20 have a viable claim against Cowboys despite the fact that Cowboys personnel ultimately allowed them to enter. Dunaway argues that Cowboys thwarted the plaintiffs' attempts to contract when Cowboys intially denied them entry despite being dressed appropriately, and then forced them to go home and change clothes, and forced them to wait before attempting reentry. Dunaway insists that the allegations in Paragraphs 15, 18, and 20 implicate 42 U.S.C.A. § 1981 because Cowboys denied the plaintiffs the opportunity to make a contract to enter under the same terms as Caucasian patrons, and because Cowboys prevented the plaintiffs from enforcing the contract when they had to leave and could not use the dance floor, play the games, or purchase drinks. Dunaway argues that in all instances, Cowboys denied the plaintiffs entertainment services by preventing the plaintiffs from enjoying all the benefits and privileges of the contractual relationship.

Dunaway insists that the plaintiffs have direct evidence of discrimination. Dunaway attaches the affidavits of eleven individuals who witnessed Cowboys personnel discriminate against the plaintiffs and other African American males.[16] Both Caucasian and African American individuals testified that they witnessed Cowboys personnel exclude African American males from the club who

---

[14] Paragraphs 24, 27(g), 27(k). Petition [doc. 1-2]; First Supp. & Amend. Petition [doc. 2]; Second Supp. & Amend. Petition [doc. 3].

[15] Def.'s Ex. 2 [doc. 88-5].

[16] Pl.'s Exs. A-L [docs. 99-1– 99-4; 100; 101-1].

adhered to the dress code.[17] The witnesses also testified that security personnel excluded African American patrons without reason.[18] Dunaway disputes the legitimate, non-discriminatory reasons for Cowboys' actions and submits the affidavit of expert witness Dr. Wayne Shiendler, who opined that the nightclub policies are not applied evenly, not legitimate as applied, and that Cowboys' security and decorum fall short of industry standards.[19]

To succeed on a claim under 42 U.S.C.A. § 1981, a plaintiff must establish that: (1) he is a member of a racial minority; (2) that the defendant intended to discriminate on the basis of race; and (3) that the discrimination concerned one or more of the activities enumerated in the statute. *Arguello v. Conoco, Inc.*, 330 F.3d 355, 358 (5th Cir. 2003) (citing *Morris v. Dillard Dept. Stores, Inc.*, 277 F.3d 743, 751 (5th Cir. 2001)). There is no generalized right under Section 1981 to have access to opportunities to make prospective contracts. *Hickerson v. Macy's Dept. Store*, 1999 WL 144461 at *2 (E.D. La.).

In *Arguello*, the plaintiff alleged that a store clerk racially discriminated against her while she purchased goods at a convenience store. *Id.* at 356-357. After the clerk completed the plaintiff's transaction, she shouted obscenities and made racially derogatory remarks. *Id.* at 357. The Fifth Circuit held that the store did not violate the plaintiff's ability to make and enforce contracts under 42 U.S.C.A. § 1981 because the plaintiff successfully completed her transaction and received all she was entitled to under the retail-sales contract. *Id.* at 359. The court explained that in the retail context, a plaintiff must demonstrate "the loss of an actual, not speculative or prospective, contract

---

[17] *Id.*

[18] *Id.*

[19] Pl.'s Ex. N [doc. 101-3].

interest." *Id.* at 358. There must be "evidence of some tangible attempt to contract that was in some way thwarted by the defendant." *Id.* at 359. The court added that the store had no continuing contractual relationship; rather, the relationship was based on a single, discrete transaction- the purchase of goods. *Id.* at 360.

Other courts concur that a plaintiff must actually be denied the ability to make, enforce, or perform a contract and the mere expectation that one may try to engage in a contract is insufficient to invoke Section 1981. *See Phelps v. Wichita Eagle-Beacon*, 886 F.2d 1262, 1267 (10th Cir. 1989) (affirming dismissal of a Section 1981 claim where a plaintiff alleged merely a "possible loss of future opportunities"); *Henderson v. Jewel Food Stores, Inc.*, 1996 WL 617165 (N.D. Ill.) (holding that "a § 1981 claim must allege that the plaintiff was actually prevented, and not merely deterred, from making a purchase or receiving service after attempting to do so").

Most courts have analyzed Section 1981 claims using the burden shifting scheme established for Title VII employment discrimination claims in *McDonnell Douglas Corp. v. Green*. *McConnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). This burden shifting system is appropriate when a plaintiff must prove intentional discrimination, but there is no direct evidence of such and the plaintiff's case is based on indirect or circumstantial evidence. *See Kirt v. Fashion Bug #3253, Inc.*, 479 F.Supp.2d 938, 953 (N.D. Iowa 1997); *Gennell v. Denny's Corp., et al*, 378 F.Supp.2d 551, 558-559 (D.C. Md. 2005). Dunaway has not alleged direct discrimination, such as the hurtling of racial slurs or other insults;[20] thus, it is appropriate to analyze Dunaway's claims under *McDonnell Douglas*.

Under this burden shifting framework, a plaintiff bears the initial burden of establishing a

[20] *See* Petitions [docs. 1-2, 2, 3].

*prima facie* case of discrimination. *Gennell*, 378 F.Supp.2d 551 at 558-559. Although minimal, this burden requires the plaintiff to identify circumstances giving rise to an inference of racial discrimination. *Feacher v. Intercontinental Hotels Group*, 563 F.Supp.2d 389, 402 (N.D. N.Y. 2008). If the plaintiff shows a *prima facie* case, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse action. *Gennell*, 378 F.Supp.2d at 558-559. If the defendant meets this burden, the presumption of discrimination disappears, and the plaintiff bears the ultimate burden of proving, by a preponderance of the evidence, that the defendant discriminated against him. *Id.* (citing *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981)). Under this framework, the defendant will be entitled to summary judgment unless the plaintiff can point to evidence that reasonably supports a finding of prohibited discrimination. *Feacher*, 563 F.Supp.2d at 403 (citing *Joseph v. Leavitt*, 465 F.3d 87, 90 (2d Cir. 2006)).

In the instant case, Dunaway's claims for denial of entertainment services and denial of the right to enforce and make contracts under 42 U.S.C.A. § 1981 must fail. Dunaway argues that Cowboys is similar to a restaurant where a denial of service based on race provides a basis for a Section 1981 claim. Although the club is perhaps more similar to a restaurant than to a retail store, the plaintiffs cannot point to any service similar to a restaurant which they sought but Cowboys refused to provide. The plaintiffs in Paragraphs 6-14, 16-19, 21-27(m) paid an entry fee and gained access to the nightclub.[21] Once the plaintiffs completed that transaction, Section 1981 was not implicated until the plaintiffs sought to engage in another retail transaction. There are no allegations and no evidence that any plaintiff attempted to purchase a drink, play pool or video poker and was

[21] If the plaintiffs gained entry, they have paid an entrance fee. Def.'s Memo. [doc. 88-2]; Def.'s Ex. 2 [doc. 88-5].

denied those services. As the Fifth Circuit has stated, any speculative or prospective wish that a plaintiff may have sought does not satisfy the requirements of Section 1981. Cowboys' security personnel asked the plaintiffs to leave because they violated the nightclub's dress code, or because they violated another nightclub policy, such as standing and not dancing on the dance floor or obstructing other customers' access to the bar. Cowboys' exclusion of the plaintiffs for violations of nightclub policy does not involve a contract interest protected by 42 U.S.C.A. § 1981.

Dunaway also claims that Cowboys thwarted some of the plaintiffs' access to the club by initially denying them entry to the club, thereby delaying access to the club. Cowboys' dress code appears prominently at the entrance to the club, and Cowboys has articulated its legitimate, non-discriminatory reasons for the dress code.[22] Cowboys has also submitted testimony from individuals who witnessed Cowboys' security excluding both African American and Caucasian persons from the club for violation or non-adherence to the posted dress code.[23] In response, Dunaway attaches affidavits from eleven persons;[24] however, this affidavit testimony is insufficient to defeat summary judgment. The affidavits merely state that the affiants saw African American persons being excluded or discriminated against "after March 2006".[25] The affidavits are vague and lack specificity and this Court cannot conclude whether the affiants are describing the same situations and events as those pled in the petitions.

Dunaway's claims also fail when analyzed under the *McDonnell Douglas* burden shifting

---

[22] Def.'s Ex. 2 [doc. 88-5].

[23] Def.'s Exs. 9, 10, 11 [docs. 88-12, 88-13, 88-14].

[24] Pl.'s Exs. A-L [docs. 99-1– 99-4; 100; 101-1].

[25] *Id.*

framework. Dunaway has not demonstrated a *prima facie* case of discrimination for the alleged claims. As previously mentioned, no statutorily protected right is implicated in Paragraphs 15, 18, 20, and 26 because all plaintiffs involved were allowed into the nightclub. Moreover, Dunaway cannot show a *prima facie* case of discrimination on the remaining claims because the plaintiffs' "feelings and perceptions of being discriminated against are not evidence of discrimination." *Feacher*, 563 F.Supp.2d at 405. The *Feacher* court explained that a plaintiff must produce evidence that allows for a reasonable inference of discrimination, as opposed to evidence that gives rise to mere speculation and conjecture. *Id.* Even assuming that Dunaway met the initial burden of establishing a *prima facie* case of discrimination, Cowboys has satisfied its burden of demonstrating legitimate, non-discriminatory reasons for asking the plaintiffs to leave the nightclub. As stated above, Cowboys has a dress code to maintain security and decorum at its establishment, and Cowboys has evidence of excluding members of all races for dress code violations.[26] Cowboys also has valid reasons for keeping customers moving along the bar and dancing on the dancefloor.[27] Dunaway cannot prove, by a preponderance of the evidence, that Cowboys discriminated against the plaintiffs because Dunaway has insufficient evidence to show that Cowboys treated the plaintiffs differently than Caucasian or other similarly situated patrons. Accordingly, the claims in Paragraphs 6-27(m), which allege a violation of 42 U.S.C.A. § 1981, are hereby DISMISSED.

**Remaining Grounds for Summary Judgment**

All of Dunaway's claims for violations of federal law are dismissed; thus, the remaining

---

[26] Def.'s Exs. 1, 2, 3 [docs. 88-4, 88-5, 88-6]; Def.'s Exs. 9, 10, 11 [docs. 88-12, 88-13, 88-14].

[27] Def.'s Ex. 2 [doc. 88-5].

grounds for summary judgment, including prescription and *respondeat superior* liability, are MOOT. This Court also exercises its discretion to dismiss the pendent state law claims under La. Rev. Stat. Ann. § 51:2231 et seq, and Louisiana Constitution of 1974, Art. 1, § 12. Accordingly,

IT IS ORDERED that Cowboys' Motion for Summary Judgment, [doc. 88], is GRANTED in part and MOOT in part. All of the plaintiffs' claims under 42 U.S.C.A § 1981, La. Rev. Stat. Ann. § 51:2231 et seq., and Louisiana Constitution of 1974, Art. 1, § 12 are hereby DISMISSED with prejudice at the plaintiffs' cost.

IT IS FURTHER ORDERED that Cowboys' Motion to Strike, [doc. 71], is MOOT.

Lake Charles, Louisiana, this 1 day of July 2010.

PATRICIA MINALDI
UNITED STATES DISTRICT JUDGE